```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

RICHARD A. SHARP, III, et al.            CIVIL ACTION

VERSUS                                   NO: 13-5429

COVINGTON POLICE CHIEF                   SECTION: R(2)
RICHARD PALMISANO, et al.


**ORDER AND REASONS**

Before the Court are Judge Peter Garcia's and St. Tammany District Attorney Walter Reed's motions to dismiss the claims against them.[1] For the following reasons, both motions are GRANTED.

**I.   Background**

The plaintiffs in this action are Richard A. Sharp, III, Lysett Rene Lerma, Danielle Lerma, Michelle Marie Lerma, Pedro Melendez, Samurai Exploration and Production Company, LLC and Sharp Global Energy Services, LLC. The defendants are Covington Police Chief Richard Palmisano, the City of Covington, Jared Caruso Reicke, Judge Peter Garcia, American Bank and Trust Co., Inc., Resource Bank, St. Tammany District Attorney Walter Reed, GDH, Inc. ("GDH") and GDH International Inc. ("GDHI"). The

---

[1] R. Docs. 87, 90.

plaintiffs are Texas citizens, and the defendants are Louisiana citizens.[2]

The plaintiffs brought suit in the U.S. District Court for the Southern District of Texas under 42 U.S.C. §§ 1983, 1985, 1986 and 1988.[3] They allege that the defendants violated plaintiff Sharp's Fourth, Fifth, Eighth and Fourteenth Amendment rights, as well as his rights under Texas state law.[4] In addition, they allege that, as a result of the defendants' conduct, all of the plaintiffs suffered damages in the form of lost income.[5] The District Court for the Southern District of Texas transferred venue to the Eastern District of Louisiana to cure its lack of personal jurisdiction over the defendants and to create proper venue.[6]

The plaintiffs' complaint alleges the following facts: Sharp entered into a business partnership with principals of GDH, including defendant Reicke.[7] The new business, GDHI, was founded to provide upstream exploration and production services to oil and gas companies around the world, with an initial focus on the

---

[2] R. Doc. 1 at 4-7.

[3] *Id.* at 23.

[4] *Id.* at 22-23, 31.

[5] *Id.* at 32.

[6] R. Doc. 84 at 2-3.

[7] R. Doc. 1 at 10.

Kurdistan region of Iraq.[8] Sharp traveled to Iraq to conduct business on behalf of GDHI.[9] While in Iraq, he came to suspect fraud by the defendants and tried to distance himself from them.[10] Because of nonperformance by GDHI, an unidentified "client" in Iraq decided to work directly with Sharp, rather than with GDHI, and communicated this decision to GDHI. The defendants then "commenced a campaign of slander and defamation against Sharp."[11] In addition, they threatened him with "direct physical harm" and told him that "men with guns and badges were going to come get you in Texas."[12]

After he returned to Texas, Sharp was arrested on "fabricated charges."[13] He was arrested because, without his knowledge and at Reicke's instruction, Sharp's secretary issued a check on behalf of Sharp Global Energy Services, LLC and

---

[8] *Id.*

[9] *Id.* at 12.

[10] *Id.* at 14. Here and elsewhere, the plaintiffs refer indiscriminately to the "defendants" without specifying which defendants they mean to implicate. At this point in the complaint, the word "defendants" presumably refers only to Reicke, GDH and GDHI.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 14-15.

deposited it in GDHI's bank account.[14] Authorities held Sharp in Texas for 21 days before extraditing him to Louisiana.[15] Riecke and others then filed a civil action against Sharp in Louisiana.[16]

Garcia, who is a judge on the 22nd Judicial District Court of Louisiana, presided over both the civil and criminal matters against Sharp.[17] The complaint alleges that the 22nd Judicial District Court selectively allots cases involving "persons with influence," such as Reicke, to certain judges, such as Garcia.[18] Initially Garcia did not disclose that he has personal and business relationships with Reicke and Reicke's associates.[19] In the criminal matter, Garcia set Sharp's bond at $400,000, at Reicke's request.[20] In the civil matter, he signed an injunctive relief order attaching and seizing Sharp's personal property in

---

[14] *Id.* at 9. The plaintiffs explain, in their memorandum in opposition to Garcia's motion to dismiss, that Sharp was charged in Louisiana with issuing a bad check in the amount of $105,000 and with embezzlement of funds. R. Doc. 99 at 1.

[15] R. Doc. 1 at 15.

[16] *Id.* at 16.

[17] *Id.* at 18.

[18] *Id.* at 22.

[19] *Id.* at 18, 20.

[20] *Id.* at 18.

Louisiana, so that Sharp would be unable to make his bond.[21] Garcia had *ex parte* conversations with Riecke and Reicke's associates about both cases.[22]

Reicke and one of his associates visited the jail where Sharp was held and told him they would drop the criminal charges against him if he settled the civil case in their favor.[23] They said that if he did not sign the settlement agreement they proposed, he would remain in jail, and they hinted that he might be harmed while incarcerated.[24] Sharp appeared before Garcia and affirmed the settlement agreement.[25] Minutes later, another judge on the 22nd Judicial District Court held a bond reduction hearing in Sharp's criminal matter and reduced bond to $200,000.[26] In total, Sharp spent 81 days in jail.[27] Garcia later disclosed his personal relationship with Riecke and recused himself from Sharp's criminal matter.[28]

---

[21] *Id.*

[22] *Id.* at 20.

[23] *Id.* at 18.

[24] *Id.*

[25] *Id.* at 19.

[26] *Id.*

[27] *Id.* at 20.

[28] *Id.* at 21 n.5.

The plaintiffs allege that Sharp was "falsely assaulted, detained, and charged . . . in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution."[29] They allege that Reed, the District Attorney whose office brought the criminal charges against Sharp, received "things of value" in exchange for falsely charging and maliciously prosecuting Sharp.[30] They further allege that Reed has unspecified "personal and business relationships with defendants and defendant owned and controlled entities such as banks and companies."[31]

The complaint alleges that, as a result of the defendants' actions, Sharp's companies, Samurai Exploration and Production, LLC and Sharp Global Energy Services, LLC, lost income and ceased to exist, and Sharp and the other individual plaintiffs lost their jobs and "related sources of income."[32] The complaint alleges that Reicke continues to threaten Sharp.[33]

**II. Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is

---

[29] *Id.* at 23.

[30] *Id.* at 7-8.

[31] *Id.* at 16.

[32] *Id.* at 32.

[33] *Id.* at 33.

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks removed). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

    A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v.*

*Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

### III. Claims Against Garcia

The complaint names Garcia only in his individual capacity.[34] Garcia maintains that the complaint does not state a cause of action against him or, in the alternative, that he is entitled to judicial immunity. Without addressing whether the complaint states a cause of action against Garcia, the Court finds that Garcia is entitled to judicial immunity and that the claims against him must be dismissed on this ground.

Judges are generally immune from suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam). "[J]udicial immunity is an immunity from suit and not just from ultimate assessment of damages." *Id.* at 11. It is "not overcome by allegations of bad faith or malice and 'applies even when the judge is accused of acting maliciously and corruptly.'" *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (emphasis removed) (quoting *Mireles*, 502 at 11). "It is the Judge's actions alone, not intent, that we must consider." *Id.* (quoting *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993)) (quotation marks removed).

A plaintiff may overcome judicial immunity in two sets of circumstances: (1) "a judge is not immune from liability for

---

[34] *Id.* at 6.

nonjudicial actions, i.e. actions not taken in the judge's judicial capacity," and (2) "a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12. In determining whether a judge acted outside his judicial capacity, the Court is required to consider four factors to assess whether the judge's actions were "judicial in nature":

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Ballard*, 413 F.3d at 515 (quoting *Malina*, 994 F.2d at 1124). "These factors are broadly construed in favor of immunity." *Id.*

Looking at Garcia's alleged actions, it is clear that he acted in his judicial capacity. The plaintiffs allege that Garcia did not recuse himself; set a high bond in Sharp's criminal case; ordered injunctive relief attaching and seizing Sharp's personal property; and affirmed the settlement agreement between Sharp and Reicke. Determining whether to recuse oneself from a case, setting bond, ordering injunctive relief, and affirming settlement agreements are normal judicial functions. Further, the alleged conduct centered around cases pending before the 22nd Judicial District Court. The Court concludes that Garcia's alleged actions were taken in his judicial capacity.

In addition, there is no indication that Garcia acted in complete absence of all jurisdiction. As a Louisiana District Court judge, he properly exercised his jurisdictional authority to hear "all civil and criminal matters." La. Const. art. 5, § 16. He is entitled to judicial immunity in this action.

The Court notes that judicial immunity bars both the federal and state law claims against Garcia, regardless of whether Texas or Louisiana law applies to the state law claims. *See Hawkins v. Walvoord*, 25 S.W.3d 882, 890 (Tex. Ct. App. 2000) ("Texas follows the principles of judicial immunity set out by the United States Supreme Court."); *Moore v. Taylor*, 541 So. 2d 378, 381 (La. Ct. App. 1989) ("Louisiana jurisprudence on judicial immunity mirrors the federal doctrine.").

## IV. Claims Against Reed

The complaint names Reed in both his individual and official capacities.[35] The Court concludes that the § 1983 claims and derivative § 1988 claims for attorney's fees against Reed in his individual capacity must be dismissed on the ground of prosecutorial immunity. The § 1983 claims and derivative § 1988 claims for attorney's fees against Reed in his official capacity must be dismissed as well, because the plaintiffs do not sufficiently allege that Reed acted pursuant to a municipal policy or custom.

---

[35] *Id.* at 7.

A.   *Section 1983 Claims Against Reed in His Individual Capacity*

Prosecutors are absolutely immune from liability in § 1983 suits for damages when the conduct complained of is "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (quotation marks removed). Absolute immunity applies when a prosecutor acts as "an officer of the court" but may not apply when he is "engaged in other tasks, say, investigative or administrative tasks." *Id.* at 342 (quoting *Imbler*, 424 U.S. at 431 n.33) (quotation marks removed). The Supreme Court has held that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence in support of a search warrant application. *Id.* at 343. It does not apply when a prosecutor gives advice to police during a criminal investigation, makes statements to the press, or acts as a complaining witness in support of a warrant application. *Id.*

Here, the plaintiffs allege that Reed falsely charged and maliciously prosecuted Sharp. All of Reed's alleged conduct is intimately associated with the judicial phase of the criminal process, as it directly relates to the formal criminal prosecution of Sharp. Thus, in his individual capacity, Reed is entitled to absolute prosecutorial immunity.

The Court notes that prosecutorial immunity bars both the federal and state law claims against Reed in his individual capacity, regardless of whether Texas or Louisiana law applies to the state law claims. *See Clawson v. Wharton Cnty.*, 941 S.W.2d 267, 271 (Tex. Ct. App. 1996) ("In construing the doctrine of absolute [prosecutorial] immunity, Texas courts follow federal jurisprudence"); *Knapper v. Connick*, 681 So. 2d 944, 947 (La. 1996) (adopting federal doctrine of prosecutorial immunity). Prosecutorial immunity does not, however, apply to the claims against Reed in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985).

B. *Section 1983 Claims Against Reed in His Official Capacity*

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165 (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978)) (quotation marks removed). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166.

"[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation." *Id.* (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981))

12

(quotation marks removed). "[T]hus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (quoting *Monell*, 436 U.S. at 694).

> [A] policy may be either a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's governing body (or by one or more officials to whom the governing body has delegated policy-making authority), or a persistent, widespread practice of city officials or employees that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy.

*McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). "Isolated instances, on the other hand, are inadequate to prove knowledge and acquiescence by policymakers." *Id.*

Here, the plaintiffs do not sufficiently allege a municipal policy or custom. Rather, the allegations that Reed received things of value in return for using the powers of his office to assist Reicke in obtaining a favorable settlement in the civil matter suggest that Reed's alleged conduct was the result of the specific circumstances present here, rather than the result of an established policy or custom.

The complaint conclusorily alleges that Reed acted "under color of law, statutes, customs, policies, ordinances and usages of . . . the Parish of St. Tammany,"[36] that he "used the policy and procedure to engage in illegal activities to illegally secure

---

[36] *Id.* at 26.

13

charges,"[37] that "[a]ll of the acts and omissions alleged herein are established customs, policies and practices,"[38] and that Reed "fail[ed] to adopt and enforce reasonably appropriate policies, practices, and procedures for the operation and administration of the internal affairs of . . . the District Attorney's Office."[39] It does not, however, allege a factual basis for these conclusory allegations. Without specific factual allegations regarding other instances of malicious prosecution, the allegations against Reed describe no more than an isolated incident of malicious prosecution, which does not trigger official liability. *See Yates v. Unidentified Parties*, 73 F. App'x 19, 20 (5th Cir. 2003); *see also Iqbal*, 556 U.S. at 686. Thus, the official-capacity claims against Reed must be dismissed.

C.   *Claims Brought Under §§ 1985 and 1986*

Additionally, the plaintiffs' §§ 1985 and 1986 claims against Reed, as well as their derivative § 1988 claims for attorney's fees, must be dismissed. In this circuit, § 1985 claims alleging a conspiracy to violate a person's constitutional rights require "an allegation of a race-based conspiracy." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000). The

---

[37] *Id.* at 27.

[38] *Id.* at 28.

[39] *Id.*

allegations in the plaintiffs' complaint have nothing to do with race. The complaint alleges that Reed maliciously prosecuted Sharp to help Reicke obtain a favorable civil settlement. The § 1985 claims must be dismissed. Further, because a violation of § 1986 is premised on a violation of § 1985, the § 1986 claims must be dismissed as well. *See id.*

## V.   Claim for Injunctive Relief

The plaintiffs make an ambiguous claim for injunctive relief "to Prevent Bad-Faith Prosecution."[40] They do not specify which defendants this claim applies to but presumably direct it toward Reed and perhaps Garcia as well. This claim must be dismissed. The Court may not issue an injunction interfering with Sharp's state court prosecution, as such an injunction would violate "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41 (1971). There is no indication that allowing Sharp's state court prosecution to proceed will result in "irreparable injury" that is "both great and immediate." *See id.* at 46 (quoting *Fenner v. Boykin*, 271 U.S. 240, 243 (1926)) (quotation marks removed).

Additionally, to the extent that the plaintiffs direct their claim for injunctive relief toward Garcia, statutory judicial immunity bars the claim. *See* 42 U.S.C. § 1983 ("in any action

---

[40] *Id.* at 3.

brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable").

## VI. Hobbs Act Claims

The complaint makes vague references to the Hobbs Act, 18 U.S.C. § 1951.[41] To the extent that the plaintiffs intend to bring claims against Garcia and Reed under that statute, these claims must be dismissed. The Hobbs Act is a criminal statute that does not provide a private right of action. *See, e.g.*, *Stanard v. Nygren*, 658 F.3d 792, 794 (7th Cir. 2011).

## VII. Conclusion

For the foregoing reasons, Garcia's and Reed's motions to dismiss are GRANTED. The plaintiffs' claims against Garcia and Reed are DISMISSED.

New Orleans, Louisiana, this __8th__ day of November, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[41] *Id.* at 1, 5, 8.