```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA


RICHARD A. SHARP, III, et al.          CIVIL ACTION

VERSUS                                  NO: 13-5429

COVINGTON POLICE CHIEF                  SECTION: R(2)
RICHARD PALMISANO, et al.
```

**ORDER AND REASONS**

Before the Court are defendants Jared Caruso Riecke, GDH International, Inc. and American Bank & Trust Company, Inc.'s motion to dismiss;[1] defendants Covington Police Chief Richard Palmisano and the City of Covington's motion to dismiss;[2] and defendant Resource Bank's motion to dismiss.[3] For the following reasons, all three motions are GRANTED.

## I.  Background

The plaintiffs in this action are Richard A. Sharp, III, Lysett Rene Lerma, Danielle Lerma, Michelle Marie Lerma, Pedro Melendez, Samurai Exploration and Production Company, LLC and Sharp Global Energy Services, LLC. The defendants are Covington Police Chief Richard Palmisano, the City of Covington, Jared Caruso Riecke, Judge Peter Garcia, American Bank & Trust Company,

---

[1] R. Docs. 93, 52.

[2] R. Docs. 103, 39.

[3] R. Doc. 114.

Inc. ("American Bank & Trust"), Resource Bank, Brian Palmisano, St. Tammany District Attorney Walter Reed, GDH, Inc. ("GDH") and GDH International, Inc. ("GDHI").[4] The plaintiffs are Texas citizens, and the defendants are Louisiana citizens.[5]

The plaintiffs brought suit in the U.S. District Court for the Southern District of Texas under 42 U.S.C. §§ 1983, 1985, 1986 and 1988.[6] They allege that the defendants violated plaintiff Sharp's Fourth, Fifth, Eighth and Fourteenth Amendment rights, as well as his rights under Texas state law.[7] In addition, they allege that, as a result of the defendants' conduct, all of the plaintiffs suffered damages in the form of lost income.[8] The District Court for the Southern District of Texas transferred venue to the Eastern District of Louisiana to cure its lack of personal jurisdiction over the defendants and to create proper venue.[9]

The plaintiffs' complaint alleges the following facts: Sharp entered into a business partnership with principals of GDH,

---

[4] The Court dismissed the claims against Garcia and Reed in a prior order. R. Doc. 126.

[5] R. Doc. 1 at 4-7.

[6] *Id.* at 23.

[7] *Id.* at 22-23, 31.

[8] *Id.* at 32.

[9] R. Doc. 84 at 2-3.

including defendant Riecke.[10] The new business, GDHI, was founded to provide upstream exploration and production services to oil and gas companies around the world, with an initial focus on the Kurdistan region of Iraq.[11] Sharp traveled to Iraq to conduct business on behalf of GDHI.[12] While in Iraq, he came to suspect fraud by the defendants and tried to distance himself from them.[13] Because of nonperformance by GDHI, an unidentified "client" in Iraq decided to work directly with Sharp, rather than with GDHI, and communicated this decision to GDHI. The defendants then "commenced a campaign of slander and defamation against Sharp."[14] In addition, they threatened him with "direct physical harm" and told him that "men with guns and badges were going to come get you in Texas."[15]

After he returned to Texas, Sharp was arrested on "fabricated charges."[16] He was arrested because, without his

---

[10] R. Doc. 1 at 10.

[11] *Id.*

[12] *Id.* at 12.

[13] *Id.* at 14. Here and elsewhere, the plaintiffs refer indiscriminately to the "defendants" without specifying which defendants they mean to implicate. At this point in the complaint, the word "defendants" presumably refers only to Riecke, GDH and GDHI.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 14-15.

knowledge and at Riecke's instruction, Sharp's secretary issued a check on behalf of Sharp Global Energy Services, LLC and deposited it in GDHI's bank account.[17] Authorities held Sharp in Texas for 21 days before extraditing him to Louisiana.[18] Riecke and others then filed a civil action against Sharp in Louisiana.[19]

Garcia, who is a judge on the 22nd Judicial District Court of Louisiana, presided over both the civil and criminal matters against Sharp.[20] The complaint alleges that the 22nd Judicial District Court selectively allots cases involving "persons with influence," such as Riecke, to certain judges, such as Garcia.[21] Initially Garcia did not disclose that he has personal and business relationships with Riecke and Riecke's associates.[22] In the criminal matter, Garcia set Sharp's bond at $400,000, at Riecke's request.[23] In the civil matter, he signed an injunctive

---

[17] *Id.* at 9. The plaintiffs explain, in their memoranda in opposition to the defendants' various motions to dismiss, that Sharp was charged in Louisiana with issuing a bad check in the amount of $105,000 and with embezzlement of funds. R. Docs. 117, 118, 120 at 1-2.

[18] R. Doc. 1 at 15.

[19] *Id.* at 16.

[20] *Id.* at 18.

[21] *Id.* at 22.

[22] *Id.* at 18, 20.

[23] *Id.* at 18.

order attaching and seizing Sharp's personal property in Louisiana, so that Sharp would be unable to make his bond.[24]

Riecke and one of his associates visited the jail where Sharp was held and told him they would drop the criminal charges against him if he settled the civil case in their favor.[25] They said that if he did not sign the settlement agreement they proposed, he would remain in jail, and they hinted that he might be harmed while incarcerated.[26] Sharp appeared before Garcia and affirmed the settlement agreement.[27] Minutes later, another judge on the 22nd Judicial District Court held a bond reduction hearing in Sharp's criminal matter and reduced bond to $200,000.[28] In total, Sharp spent 81 days in jail.[29]

The plaintiffs allege that Sharp was "falsely assaulted, detained, and charged . . . in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution."[30] The complaint alleges that, as a result of the defendants' actions, Sharp's companies, Samurai Exploration and

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 19.

[28] *Id.*

[29] *Id.* at 20.

[30] *Id.* at 23.

Production, LLC and Sharp Global Energy Services, LLC, lost income and ceased to exist, and Sharp and the other individual plaintiffs lost their jobs and "related sources of income."[31] The complaint alleges that Riecke continues to threaten Sharp.[32]

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks removed). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It

---

[31] *Id.* at 32.

[32] *Id.* at 33.

need not contain detailed factual allegations, but it must go beyond labels, legal conclusions or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

**III. Claims Against Resource Bank**

The plaintiffs mention Resource Bank only once in their 35-page complaint. They state that Resource Bank "is involved in the matters and is a beneficiary of the action of the defendants including but not only those of the District Attorney."[33] They provide no further explanation of Resource Bank's involvement in the alleged conspiracy and no further detail as to the bank's relationship with the other defendants or with the plaintiffs. Their memorandum in opposition to Resource Bank's motion to dismiss offers no clarification. It states that "Resource Bank

---

[33] *Id.* at 7.

acted in consort with [Riecke] and at [Riecke's] command," but fails to explain what Resource Bank is alleged to have done.[34] The Court holds that the plaintiffs have failed to state a claim against Resource Bank that is plausible on its face. The claims against Resource Bank must be dismissed.

**IV.   Section 1983 Claims**

"Section 1983 affords a private cause of action to any party deprived of a constitutional right under color of state law." *Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095 (5th Cir. 1996). The plaintiffs allege that the defendants deprived Sharp of his Fourth, Fifth, Eighth and Fourteenth Amendment rights. The Court finds that the complaint does not plausibly state a claim for relief under any of these constitutional provisions and that the plaintiffs' § 1983 claims against Riecke, GDHI, American Bank & Trust, Richard Palmisano and the City of Covington must be dismissed.

*A.   Fifth Amendment Claims*

"The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). None

---

[34] R. Doc. 118 at 6.

of the defendants in this action is a federal actor, and the plaintiffs do not allege that either the United States or any federal actor violated Sharp's rights. Thus, the plaintiffs' Fifth Amendment claims must be dismissed.

B.   *Eighth Amendment Claims*

The Eighth Amendment protects the basic rights of convicted prisoners. *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 393 (5th Cir. 2000). Pretrial detainees look to the Fourteenth Amendment for similar protections. *Id.* Here, the plaintiffs do not allege that Sharp was a convicted prisoner. Rather, they allege that he was held pretrial, with criminal charges pending.[35] Thus, their Eighth Amendment claims must be dismissed.

C.   *Fourteenth Amendment Equal Protection Claims*

The plaintiffs allege that the defendants violated Sharp's Fourteenth Amendment right to equal protection.[36] To bring an equal protection claim as a "class of one," a plaintiff must show that he was "intentionally treated differently from others similarly situated." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The plaintiffs do not allege that the defendants

---

[35] R. Doc. 1 at 18-20.

[36] *Id.* at 24-25, 30.

treated Sharp differently from any other person similarly situated. Thus, they fail to state a plausible equal protection claim.

D.   *Fourth Amendment and Fourteenth Amendment Due Process Claims*

The plaintiffs' remaining § 1983 claims are premised on alleged violations of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment.[37] To prevail on a § 1983 claim, a plaintiff must establish that the defendant violated his rights "under color of law." *Brummett v. Camble*, 946 F.2d 1178, 1184-85 (5th Cir. 1991). Here, the plaintiffs bring claims against both private actors, including Riecke, GDHI and American Bank & Trust, and public actors, including Covington Police Chief Richard Palmisano and the City of Covington.

1.   *Riecke, GDHI and American Bank & Trust*

Private persons may act "under color of law" if they conspire with public actors to use the authority of public office to violate a person's rights. *Id.* Here, the plaintiffs allege that Riecke, GDHI and American Bank & Trust acted under color of law, because they conspired with public actors, including Garcia, Reed, Richard Palmisano and the City of Covington, to have Sharp

---

[37] *Id.* at 22, 24-25, 28, 30.

arrested and charged in violation of his constitutional rights.[38] The Court finds that the plaintiffs fail to allege a plausible conspiracy between the private and public defendants. For this reason, their § 1983 claims against Riecke, GDHI and American Bank & Trust must be dismissed.

    The plaintiffs allege that a business arrangement between Riecke and Sharp fell apart acrimoniously;[39] that Riecke and/or his associates threatened Sharp and told Sharp that "men with guns and badges" would come for him;[40] that Sharp was arrested for passing a bad check;[41] that Sharp faced "fabricated charges;"[42] that St. Tammany District Attorney Reed received "things of value" for maliciously prosecuting Sharp;[43] that Sharp was held on a high bond;[44] that Judge Garcia presided over both the civil and criminal matters against Sharp;[45] that Judge Garcia did not disclose initially his personal and business

---

[38] *Id.* at 25-26.

[39] *Id.* at 13-14.

[40] *Id.* at 14.

[41] *Id.* at 9-10; *see also* R. Docs. 117, 118, 120 at 1-2.

[42] R. Doc. 1 at 14-15.

[43] *Id.* at 7-8.

[44] *Id.* at 16.

[45] *Id.* at 18.

relationships with Riecke and Riecke's associates;[46] and that Riecke and his associates used the criminal charges against Sharp to pressure him into signing a civil settlement agreement, which Garcia affirmed.[47] The plaintiffs fail to allege facts sufficient to support a reasonable inference that the private and public defendants conspired to arrest and prosecute Sharp. Their complaint suggests, rather, that Garcia may have had a conflict of interest, and that Riecke and his associates may have leveraged the criminal charges against Sharp in their favor.

The closest the plaintiffs come to making a specific allegation of cooperation between the private and public defendants is the allegation that Reed received "things of value" for maliciously prosecuting Sharp. The plaintiffs do not specify, however, what those things of value were, who offered them to Reed, or when or by what means such an offer was made. The Court concludes that the plaintiffs fail to raise their allegations of cooperation between the private and public defendants above the speculative level. Accordingly, they fail to state plausible § 1983 claims against Riecke, GDHI or American Bank & Trust.

2.  *Police Chief Palmisano and the City of Covington*

---

[46] *Id.* at 18, 20.

[47] *Id.* at 17.

12

To be liable under § 1983, a law enforcement official "must be either personally involved in the acts causing the deprivation of a person's constitutional rights," or there must be a "causal connection" between his conduct and the constitutional violation at issue. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). "A causal connection may be established, for section 1983 purposes, where the constitutional deprivation and practices occur as a result of the implementation of the [official's] affirmative wrongful policies by his subordinates." *Id.* Further, a municipality may be liable under § 1983 if its policies evince deliberate indifference to the rights of citizens and actually cause injury. *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 457 (5th Cir. 2000).

Here, the plaintiffs fail plausibly to allege that Police Chief Palmisano was personally involved in the acts causing the alleged deprivation of Sharp's constitutional rights. Beyond the conclusory assertion that "Covington Police Chief Palmisano, City Attorney Julian Rodrigue, and Mayor Michael Cooper had Sharp arrested in Texas,"[48] which is implausible without a factual foundation, the plaintiffs make no allegations suggesting that Palmisano was personally involved in Sharp's arrest and detention. The Court concludes that the complaint fails to state a claim against Palmisano based on personal involvement.

---

[48] *Id.* at 21.

The plaintiffs assert as well that Palmisano and the City of Covington are liable, because the alleged deprivation of Sharp's rights was the result of the police department's wrongful policies and/or failure to train its officers.[49] The Court finds that the allegations of liability based on municipal policy are inadequate, amounting only to labels, legal conclusions and formulaic recitations of the elements of a municipal-liability cause of action. *See Iqbal*, 556 U.S. at 678. The plaintiffs fail to allege facts sufficient to support an inference that Palmisano or any other city decisionmaker acted with deliberate indifference, a stringent standard that requires proof that a municipal actor disregarded a known or obvious consequence of his action. *See Brown*, 219 F.3d at 457. Further, they fail plausibly to allege that a municipal policy was the "moving force" behind Sharp's injuries. *See id.* Accordingly, the Court finds that the plaintiffs fail to state § 1983 claims against Richard Palmisano or the City of Covington.

**V.   Claims Brought Under §§ 1985 and 1986**

The plaintiffs' §§ 1985 and 1986 claims against Riecke, GDHI, American Bank & Trust, Richard Palmisano and the City of Covington also must be dismissed. In this circuit, § 1985 claims alleging a conspiracy to violate a person's constitutional rights

---

[49] *Id.* at 26-29.

14

require "an allegation of a race-based conspiracy." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000). The allegations in the plaintiffs' complaint have nothing to do with race. The complaint alleges that the defendants conspired to arrest, detain and prosecute Sharp to help Riecke obtain a favorable civil settlement. The § 1985 claims must be dismissed. Further, because a violation of § 1986 is premised on a violation of § 1985, the § 1986 claims must be dismissed as well. *See id.*

**VI. Section 1988 Claims**

The plaintiffs make claims for fees pursuant to 42 U.S.C. § 1988.[50] Under § 1988, a plaintiff who prevails in an action brought under §§ 1983, 1985 or 1986, *inter alia*, may be awarded attorney's fees. 42 U.S.C. § 1988. Thus, the plaintiffs' § 1988 claims are derivative of their §§ 1983, 1985 and 1986 claims. Because their §§ 1983, 1985 and 1986 claims against Riecke, GDHI, American Bank & Trust, Richard Palmisano and the City of Covington fail, *see supra*, their § 1988 claims against these defendants fail as well.

**VII. State Law Claims**

---

[50] *Id.* at 26, 34.

The plaintiffs make cursory allegations of liability under "various" Texas state laws, "including the acts of false arrest, false imprisonment, assault, battery and extortion."[51] They do not specify, and it is not apparent, which of the many named defendants is allegedly liable for each of these acts. Neither do they explain why Texas law applies to their claims. Most of the conduct alleged in the complaint took place in Louisiana, and the plaintiffs do not allege facts suggesting that any of the defendants actually arrested, imprisoned, assaulted, battered or extorted Sharp in Texas. Nevertheless, the plaintiffs explicitly invoke Texas, rather than Louisiana, state law.[52] Thus, their state law claims appear to rely on the theory that the defendants, though located in Louisiana, conspired to have Sharp arrested in Texas.

As discussed *supra*, the Court finds that the plaintiffs fail plausibly to allege the existence of an unlawful conspiracy between the various defendants. See *Twombly*, 550 U.S. at 555-56. Further, there is no allegation that any of the defendants conspired with Texas state officials to have Sharp unlawfully arrested and detained. Finally, the Court concludes that the complaint fails plausibly to allege that Sharp's arrest for passing a bad check was unlawful, or that he suffered assault or

---

[51] *Id.* at 31.

[52] *Id.*

battery in the course of his arrest or detention. The plaintiffs' state law claims must be dismissed.

**VIII. Claim for Injunctive Relief**

The plaintiffs make an ambiguous claim for injunctive relief "to Prevent Bad-Faith Prosecution."[53] They do not specify which defendants this claim applies to. In any event, the claim must be dismissed. The Court may not issue an injunction interfering with Sharp's state court prosecution, as such an injunction would violate "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41 (1971). There is no indication that allowing Sharp's state court prosecution to proceed will result in "irreparable injury" that is "both great and immediate." *See id.* at 46 (quoting *Fenner v. Boykin*, 271 U.S. 240, 243 (1926)) (quotation marks removed).

**IX. Hobbs Act Claims**

The complaint makes vague references to the Hobbs Act, 18 U.S.C. § 1951.[54] To the extent that the plaintiffs intend to bring claims under that statute, these claims must be dismissed. The Hobbs Act is a criminal statute that does not provide a

---

[53] *Id.* at 3.

[54] *Id.* at 1, 5, 8.

private right of action. *See, e.g.*, *Stanard v. Nygren*, 658 F.3d 792, 794 (7th Cir. 2011).

## X. Conclusion

For the foregoing reasons, the motions to dismiss filed by Riecke, GDHI, American Bank & Trust, Richard Palmisano, the City of Covington and Resource Bank are GRANTED. The plaintiffs' claims against these defendants are DISMISSED.

New Orleans, Louisiana, this __30th__ day of December, 2013.

*[signature: Sarah Vance]*

**SARAH S. VANCE**
**UNITED STATES DISTRICT JUDGE**